Nicholas KOPPINGER, Plaintiff,

v.

AMERICAN INTERIORS, INC., et al., Defendants.

No. 3:03CV7035.

United States District Court, N.D. Ohio, Western Division.

Dec. 5, 2003.

Catherine H. Killam, Arnold & Caruso, R. Michael Frank, Arnold & Caruso, R. Kevin Greenfield, Arnold & Caruso, Toledo, OH, for Plaintiff.

Brian C. Kelly, Honigman, Miller, Schwartz & Cohn, Detroit, MI, Thomas A.

Dixon, Eastman & Smith, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is an action for overtime compensation allegedly due to the plaintiff, Nicholas Koppinger, under the Fair Labor Standards Act ("FLSA"), from his previous employer, defendant American Interiors, Inc. ("AI"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment. For the reasons stated below, that motion will be granted.

## BACKGROUND

In 1999, Plaintiff became the information technology ("IT") department employee for the defendant. His was a one-man department. Plaintiff, a salaried employee, was responsible for maintaining the company's computer system.

Though he referred to himself as the company's IT director, he had no such formal title. His duties consisted of ordering replacement parts, recommending purchases of new software and hardware, installing software, and repairing equipment for the company's computer users. When users called in with computer problems, plaintiff determined the priority of and when and how to handle those problems. No one set his priorities; he worked largely, if not entirely, independently.

While the plaintiff did a fair amount of work loading software and fixing computers and other equipment, he also made recommendations about what software/hardware the company should purchase. For instance, he was instrumental in the company's decision to upgrade the server and software and its acquisition of laptop computers, new server software, and replacement parts for the computers. While the larger purchases were approved by the owner of the company, plaintiff was usually the one who made the suggestions, researched the cost of the proposed change, and implemented the change once approved. In addition, he did not need to seek approval for purchases he considered routine; he merely charged such purchases on his company credit card.

In October, 2002, plaintiff, apparently because of a personality conflict with an employee at the Wixom, Michigan satellite office, informed his supervisor, defendant Starkey, that he would not perform duties at the Wixom office. Because of this refusal, AI terminated his employment.

Plaintiff seeks compensation for overtime he alleges is due to him under the FLSA. Defendant's position is that plaintiff's position is exempt from the FLSA, as he was an "administrative employee."

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. FLSA Exemption

The FLSA's maximum hours requirement provides that an employee must receive overtime pay at a rate not less than one and one half times the regular rate if he works more than forty hours per week. 29 U.S.C. § 207(a)(1). The statute exempts from the maximum hours requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The employer must prove that an employee is exempt. *Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 70 (6th Cir.1997). The exemption is "narrowly construed against the employers seeking to assert [it]." *Id.* (citation and quotation omitted). Application of the exemption is limited to

those circumstances plainly and unmistakably within the exemption's terms and spirit. *Id.* The issue of how an employee spends his time is a question of fact, while the issue of whether his activities fall within an exemption is a question of law. *Schaefer v. Indiana Michigan Power Co.*, 197 F.Supp.2d 935, 939 (W.D.Mich.2002).

The FLSA does not define the term "bona fide administrative capacity" and Congress delegated the responsibility of defining the term to the Secretary of Labor. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.2.

The FLSA's implementing regulations provide employers with two tests with which to prove that employees fall under the administrative exemption. The five-part "long test" applies to employees who are paid "on a salary or fee basis at a rate of not less than $155 per week." 29 C.F.R. § 541.2(e)(1). The three-part "short test," conversely, applies to those employees paid "on a salary or fee basis at a rate of not less than $250 per week." 29 C.F.R. § 541.2(e)(2). The parties agree that the short test applies in this case, as the plaintiff was paid more than $250 per week.

The defendant must prove that: 1) it paid plaintiff on a salary or fee basis; 2) plaintiff's primary job duties consisted of the "performance of nonmanual work directly related to management policies or general business operations" of defendant; and 3) plaintiff's work "includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. §§ 541.2(a)(1), (e)(2). There is no dispute regarding the first factor: plaintiff was paid on a salary basis. The second and third factors are at issue in this case.

As to the second factor, §§ 541.203 & 541.205 of the regulations provide some guidance about the meaning of terms. As to the meaning of "nonmanual work,"

§ 541.203 [1] generally states that the work performed must be generally office work, or "white-collar" work, although some manual labor is still permissible even for an otherwise "administrative" employee so long as the manual labor is not the majority of the work the employee performs. As to the meaning of "directly related to management policies or general business operations," § 541.205 [2] generally states that

1.  That subpart provides:

    (a) The requirement that the work performed by an exempt administrative employee must be office work or nonmanual work restricts the exemption to "white-collar" employees who meet the tests. If the work performed is "office" work it is immaterial whether it is manual or nonmanual in nature. This is consistent with the intent to include within the term "administrative" only employees who are basically white-collar employees since the accepted usage of the term "white-collar" includes all office workers. Persons employed in the routine operation of office machines are engaged in office work within the meaning of Sec. 541.2 (although they would not qualify as administrative employees since they do not meet the other requirements of Sec. 541.2).

    (b) Section 541.2 does not completely prohibit the performance of manual work by an "administrative" employee. The performance by an otherwise exempt administrative employee of some manual work which is directly and closely related to the work requiring the exercise of discretion and independent judgment is not inconsistent with the principle that the exemption is limited to "white-collar" employees. However, if the employee performs so much manual work (other than office work) that he cannot be said to be basically a "white-collar" employee he does not qualify for exemption as a bona fide administrative employee, even if the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment. Thus, it is obvious that employees who spend most of their time in using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, would not be bona fide administrative employees within the meaning of Sec. 541.2. An office employee, on the other hand, is a "white-collar" worker, and would not lose the exemption on the grounds that he is not primarily engaged in "nonmanual" work, although he would lose the exemption if he failed to meet any of the other requirements.

    29 C.F.R. § 541.203.

2.  That subpart provides, in relevant part:

    (a) The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

    (b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

    (c) As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

the work performed should be of substantial importance to the employer, and that such things has buying and planning are usually of substantial importance to most employers.

In the instant case, the record establishes that plaintiff's work with defendant was nonmanual work directly related to the general business operations of defendant. Plaintiff's deposition[3] establishes that his position involved maintaining, upgrading, and administrating the computer system. While some of his work may be considered manual in that he necessarily had to perform some physical actions (installing hardware/software, etc.), those actions do not negate the exemption because plaintiff's deposition testimony establishes the prominence of the problem-solving, planning, and purchasing duties. (Doc. 18, at 22, 55–57, 64, 70–71, 105–06, 114, 134–35, 144, 150–51.) Plaintiff was responsible for the computer system from end to end, a computer system that was clearly integral to defendant's general business operations. Plaintiff's work, furthermore, was comprehensive in nature, and ranged from investigating problems, to considering possible solutions and implementing, in plaintiff's opinion, the best solution.

This analysis is supported by a factually-similar unpublished Sixth Circuit case. In *Lutz v. Ameritech Corp.*, Case No. 98–2367, 2000 WL 245485, *2 (6th Cir., Feb.23, 2000) (unpublished), the plaintiff was responsible for providing access to the intra-office computer network, implementing new programs, and solving network problems. While the plaintiff argued that he mainly performed manual work because he analyzed network problems with diagnostic tools and manually installed computer equipment and software, the court found support in the record for a finding that he was "accountable from end to end to insure that [the] network installation premise is up and running correctly," which involved analyzing problems and implementing solutions. The court found this to be nonmanual labor directly related to the general business operations of Ameritech. *Id.* at *2. The Sixth Circuit's analysis and holding regarding the second factor in *Lutz* supports the analysis and holding in this case.

(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business....

\* \* \* \* \* \*

(4) Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant or personnel commonly called assistant buyers in retail or service establishments. Where such work is of substantial importance to the management or operation of the business, even though it may be limited to purchasing for a particular department of the business, it is directly related to management policies or general business operations.

\* \* \* \* \* \*

(7) In the data processing field some firms employ persons described as systems analysts and computer programers. If such employees are concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of his employer or his employer's customers, he is clearly doing work directly related to management policies or general business operations.

(d) Under Sec. 541.2 the "management policies or general business operations" may be those of the employer or the employer's customers....

29 C.F.R. § 541.205.

3. To the extent that plaintiff's affidavit contradicts his earlier sworn deposition testimony, it cannot establish a genuine issue of material fact. *See Dotson v. United States Postal Serv.*, 977 F.2d 976, 978 (6th Cir.1992).

I find that defendant has carried its burden of establishing, on the basis of plaintiff's own deposition testimony, the second factor; plaintiff's work was non-

**4.** That subpart provides, in relevant part:

(a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations in subpart A of this part, moreover, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance....

(b) The term must be applied in the light of all the facts involved in the particular employment situation in which the question arises. It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following: (1) Confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2) misapplication of the term to employees making decisions relating to matters of little consequence

(c) Distinguished from skills and procedures:

(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of Sec. 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

*     *     *     *     *     *

(7) In the data processing field a systems analyst is exercising discretion and independent judgment when he develops methods to process, for example, accounting, inventory, sales, and other business in-

manual work directly related to the general business operations of defendant.

■  As to the third factor, § 541.207 [4]

formation by using electronic computers. *He also exercises discretion and independent judgment when he determines the exact nature of the data processing problem, and structures the problem in a logical manner so that a system to solve the problem and obtain the desired results can be developed.* Whether a computer programer is exercising discretion and independent judgment depends on the facts in each particular case. *Every problem processed in a computer first must be carefully analyzed so that exact and logical steps for its solution can be worked out. When this preliminary work is done by a computer programmer he is exercising discretion and independent judgment.* A computer programer would also be using discretion and independent judgment when he determines exactly what information must be used to prepare the necessary documents and by ascertaining the exact form in which the information is to be presented. Examples of work not requiring the level of discretion and judgment contemplated by the regulations are highly technical and mechanical operations such as the preparation of a flow chart or diagram showing the order in which the computer must perform each operation, the preparation of instructions to the console operator who runs the computer or the actual running of the computer by the programmer, and the debugging of a program. It is clear that the duties of data processing employees such as tape librarians, keypunch operators, computer operators, junior programers and programer trainees are so closely supervised as to preclude the use of the required discretion and independent judgment.

(d) Decisions in significant matters.

(1) The second type of situation in which some difficulty with this phrase has been experienced relates to the level or importance of the matters with respect to which the employee may make decisions. In one sense almost every employee is required to use some discretion and independent judgment.... The divisions have consistently taken the position that decisions of this nature concerning relatively unimportant matters are not those intended by the regulations in subpart A of this part, but that the discretion and independent judg-

provides some guidance as to the meaning of the terms. That section generally

ment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence. This interpretation has also been followed by courts in decisions involving the application of the regulations in this part, to particular cases.

(2) It is not possible to state a general rule which will distinguish in each of the many thousands of possible factual situations between the making of real decisions in significant matters and the making of choices involving matters of little or no consequence. It should be clear, however, that the term "discretion and independent judgment," within the meaning of the regulations in subpart A of this part, does not apply to the kinds of decisions normally made by clerical and similar types of employees. *The term does apply to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise.* The regulations in subpart A of this part, however, do not require the exercise of discretion and independent judgment at so high a level. The regulations in subpart A of this part also contemplate the kind of discretion and independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself where the executive's personal attention is not required. It includes the kind of discretion and independent judgment exercised by a customer's man in a brokerage house in deciding what recommendations to make to a customer for the purchase of securities. It may include the kind of discretion and judgment exercised by buyers, certain wholesale salesmen, representatives, and other contact persons who are given reasonable latitude in carrying on negotiation on behalf of their employers.

(e) Final decisions not necessary.

(1) The term "discretion and independent judgment" as used in the regulations in subpart A of this part *does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of*

*the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations in subpart A of this part....*

(2) ... The purchasing agent may be required to consult with top management officials before making a purchase commitment for raw materials in excess of the contemplated plant needs for a stated period, say 6 months. These employees exercise discretion and independent judgment within the meaning of the regulations despite the fact that their decisions or recommendations are reviewed at a higher level.

(f) Distinguished from loss through neglect. A distinction must also be made between the exercise of discretion and independent judgment with respect to matters of consequence and the cases where serious consequences may result from the negligence of an employee, the failure to follow instruction or procedures, the improper application of skills, or the choice of the wrong techniques. The operator of a very intricate piece of machinery, for example, may cause a complete stoppage of production or a breakdown of his very expensive machine merely by pressing the wrong button.... In these cases, the work of the employee does not require the exercise of discretion and independent judgment within the meaning of the regulations in subpart A of this part.

(g) Customarily and regularly. The work of an exempt administrative employee must require the exercise of discretion and independent judgment customarily and regularly. The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretion and independent judgment in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretion and independent judgment.

29 C.F.R. § 541.207 (emphasis added).

states that an employee must exercise discretion (as opposed to skill, or general knowledge) on a relatively regular basis as to matters of consequence, but need not be the final approving official in the chain of command.

In this case, the record establishes that plaintiff regularly, if not daily, exercised independent judgment and discretion in his employment with defendant. Plaintiff's own deposition testimony establishes that plaintiff, charged with managing the computer systems from end to end for defendant, decided what needed to be done and when it needed to be done, with almost no supervision. When called on by computer users to evaluate and/or fix a problem, plaintiff determined what priority the need had, and also, what course of action to take.

Plaintiff exercised independent judgment and discretion on several occasions with regard to suggestions for new hardware, software, or server installation when the computer system needed new components. While the owner of the company certainly had the final say, the regulations make clear that this fact does not negate the applicability of the exemption. Plaintiff regularly exercised independent judgment and discretion in purchasing replacement/repair items, not only in determining what to purchase and when, but in determining whether he needed to request approval for such purchases, depending on the size of the purchase. His judgments in these areas were seldom (if ever) reversed, and almost routinely followed.

Others inside the company sought plaintiff's judgment in matters which they considered within his expertise; in other words, while seeking to take advantage of his knowledge in the computer area, they also sought plaintiff's decision-making authority. Again, while plaintiff attempts to downplay his discretion/authority in most of these areas by stating that he needed approval from the owner on most large items, this is not dispositive.

This analysis is supported by The Sixth Circuit's decision in *Lutz, supra,* supports this analysis. In that case, the plaintiff argued that:

> he simply installs, maintains, and troubleshoots the hardware and software which makes up Ameritech's intra-company network[, and that] he relies on vendor manuals and internal documentation to perform his job duties working within pre-set guidelines created by Ameritech.

*Id.* at *3.

The court found support in the plaintiff's own deposition that "he assesses the needs of clients, develops installation plans for access to the intra-company network, and coordinates with various departments to arrange installation and ensures that plans are implemented," and "that plaintiff's work, in practice, involves a significant amount of discretion and independent judgment for designing, planning, and implementing projects which connect Ameritech employees to its data network and for ensuring that access remains fully viable." *Id.* The court thus found that the defendant had established the third factor.

The plaintiff likewise attempts to argue that he simply installs, maintains, and troubleshoots the computer system. In so arguing, plaintiff disregards his deposition testimony, which describes the planning and purchasing components of his job.[5] Like the plaintiff in *Lutz,* plaintiff Koppinger here exercised discretion and independent judgment on matters of con-

---

**5.** As to purchasing, plaintiff admitted he did this with relatively regular frequency—as much as once or twice a week. (Doc. 18, at 134.) Larger items were obviously less frequent.

sequence on a regular basis. I find, therefore, that defendant has carried its burden and has established, on the basis of plaintiff's own deposition testimony, that the third factor is met.

Having found all three factors of the "short test" applicable to plaintiff's position with defendant, I therefore find that plaintiff comes within the FLSA's administrative exemption. As a result, his claim for overtime under the FLSA must fail.

## II. Liability of Individual Defendants

Given my decision that plaintiff fits into the category of the administrative exemption, the issue of the personal liability of the individually named defendants is moot.

### CONCLUSION

In light of the foregoing, it is therefore

ORDERED THAT defendants' motion for summary judgment be, and hereby is, granted.

So ordered.