[No. D049884. Fourth Dist., Div. One. Jan. 17, 2008.]

MARK R. COMBS, Plaintiff and Appellant, v.
SKYRIVER COMMUNICATIONS, INC., et al., Defendants and
Respondents.

COUNSEL

Law Offices of Matthew G. English and Matthew G. English for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, E. Joseph Connaughton and Aaron A. Buckley for Defendants and Respondents.

OPINION

**NARES, J.**—In this action for recovery of unpaid overtime compensation, Mark R. Combs appeals judgments entered in favor of his former employer Skyriver Communications, Inc. (Skyriver), a wireless broadband Internet service provider, and its then interim chief executive officer (CEO) Massih Tayebi. During his employment at Skyriver from June 2001 to November 2004, Combs served first as manager of capacity planning and then as director of network operations. Alleging in his amended complaint that he was misclassified as an employee exempt from the overtime compensation laws and, as a result, was denied overtime pay and meal and rest breaks, Combs asserted three causes of action against both Skyriver and Tayebi

(together defendants) for (1) violation of Labor Code[1] sections 510 and 1194 and applicable Industrial Welfare Commission (IWC) wage orders; (2) violation of the unfair competition law (the UCL) (Bus. & Prof. Code, § 17200 et seq.); and (3) penalties under the Labor Code Private Attorneys General Act of 2004 (the PAGA) (§ 2698 et seq.). Combs sought to hold Tayebi liable on the theory Tayebi was Skyriver's alter ego.

The court granted summary judgment in favor of Tayebi, finding that Combs failed to present admissible evidence sufficient to raise a triable issue of material fact that Tayebi was Skyriver's alter ego. After Combs presented his case-in-chief against Skyriver during the bench trial, the court granted Skyriver's motion for judgment under Code of Civil Procedure section 631.8 on all three causes of action, finding that Combs was exempt from overtime compensation under the administrative exemption set forth in IWC wage order No. 4-2001.

On appeal, Combs contends that (1) the court's failure to apply the "administrative/production worker dichotomy" pertaining to the administrative exemption from overtime compensation, which was announced in *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59], certiorari denied *sub nom. Farmers Ins. Exchange v. Bell* (2001) 534 U.S. 1041 [151 L.Ed.2d 539, 122 S.Ct. 616] (*Bell II*) (hereafter alternately referred to as the *Bell II* administrative/production worker dichotomy, the *Bell II* dichotomy, or the dichotomy), was reversible error; (2) application of the *Bell II* dichotomy would have resulted in a determination that Combs was a production worker, not an administrator, and thus he was not exempt from overtime compensation; (3) apart from the *Bell II* test, Combs's job duties did not otherwise meet the test of the administrative exemption outlined in IWC wage order No. 4-2001, and thus he was entitled to judgment in his favor; (4) the court's grant of summary judgment in favor of Tayebi conflicts with its own summary judgment minute order that (Combs asserts) "openly acknowledged liability"; (5) material issues of fact exist with regard to Tayebi's liability in his capacity as an officer of Skyriver under the PAGA and the UCL, as he "was ultimately responsible for the conduct of the corporation during his watch"; (6) failing to pay Combs his overtime wages constituted an unfair business practice under the UCL for which Tayebi may be held liable; (7) Tayebi was not entitled to summary judgment or summary adjudication because material questions of fact exist as to whether he is the alter ego of Skyriver; and (8) the court erred when it denied Combs's motion

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

to continue the hearing on Tayebi's summary judgment motion to permit Combs to conduct further discovery on matters material to the issue of alter ego liability, which should have been allowed according to Code of Civil Procedure section 437c, subdivision (h).

We conclude the court did not err in denying Combs's motion for a continuance to conduct further discovery, in granting summary judgment in favor of Tayebi, or in granting judgment in favor of Skyriver. Accordingly, we affirm the judgments.

## FACTUAL BACKGROUND[2]

Skyriver is a high-speed, wireless, broadband Internet service provider. Tayebi was Skyriver's interim CEO. Combs started working at Skyriver in June 2001. At that time, Skyriver was a young startup company based in San Diego, California. Combs served first as manager of capacity planning, and then as director of network operations. He voluntarily resigned in November 2004. Combs's resumé, which he prepared after he left Skyriver, indicated that as Skyriver's director of network operations, he was responsible for (among other things) "project management, budgeting, vendor management, purchasing, forecasting, [and] employee management"; management of "overseas deployment of wireless data network"; management of "the integration and standardization of three networks into the Skyriver architecture"; and the overseeing of "day to day Network Operations."

At trial, Combs acknowledged his resumé was accurate. He testified that his "core" responsibility at Skyriver was "maintaining the well-being of the network," and he spent 60 percent to 70 percent of his time carrying out that responsibility.

Combs called a number of witnesses who also confirmed that Combs's resumé was accurate. Specifically, Scott Akrie, who, as Skyriver's chief technical officer, supervised Combs from 2001 to about mid-2003, and Edward West, Skyriver's former vice-president of operations, who supervised Combs from late 2003 until Combs left Skyriver, both testified that Combs's

---

[2] California Rules of Court, rule 8.204(a)(2)(C) provides that "[a]n appellant's opening brief must . . . [¶] . . . [¶] . . . [p]rovide a summary of the significant facts limited to matters in the record." Rule 8.204(a)(1)(C) provides in part that "[e]ach brief must . . . [¶] . . . [¶] . . . [s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Here, in his appellant's opening brief, Combs provides only a cursory two-page summary of facts without any citations to the record. In response to the objection to that summary made by Skyriver and Tayebi in their respondents' brief, Combs included in his reply brief a statement of facts that is mostly, but not entirely, supported by citations to the record.

description of his duties in his resumé was accurate, as did Michael Williams, Skyriver's director of field operations.

Combs's own testimony and the documentary exhibits (including Combs's resumé and some of his e-mails) showed that he was responsible for maintaining, developing and improving Skyriver's network, and his duties involved high-level problem solving and "troubleshooting"; preparing reports for Skyriver's board of directors; capacity and expansion planning; planning to integrate acquired networks into Skyriver's network; lease negotiations; and equipment sourcing and purchasing.

## PROCEDURAL BACKGROUND

### A. *Amended Complaint*

Combs's operative first amended complaint alleged three causes of action against both Skyriver and Tayebi for (1) violation of sections 510 and 1194 and applicable IWC wage orders; (2) violation of the UCL; and (3) penalties under the PAGA. In support of these claims, Combs alleged that although one or two employees reported to him during his employment at Skyriver, he "spent the majority of his work time performing the same function as those employees who reported to him," and his duties "primarily involved trouble-shooting problems with [Skyriver] computer systems and working with others to fix the problems." Combs also alleged that he was required to carry a pager at all times, including evenings, nights, and weekends; and, although he worked in excess of 40 hours per week and eight hours per day, Skyriver and Tayebi willfully failed to pay him overtime or provide him rest breaks as required by the applicable IWC wage order. He further alleged that work demands frequently interrupted his meal breaks. The amended complaint further alleged that Tayebi at all times relevant was "an alter ego, agent or employee of [Skyriver]," and there was "such a unity of interest and ownership between [Skyriver] and [Tayebi] that the separate personalities of the corporation and the individual [did] not in reality exist," and "an inequitable result [would] occur if the acts [alleged in the amended complaint were] treated as those of [Skyriver] alone."

### B. *Tayebi's Motion for Summary Judgment*

In December 2005 Tayebi brought a motion for summary judgment or, in the alternative, summary adjudication, arguing he could not be held person-ally liable for Combs's overtime pay claims on an alter ego theory because the undisputed facts showed that none of the alter ego doctrine factors applied in this case. Tayebi also argued that he could not be held personally liable on Combs's cause of action for overtime pay under sections 510 and

1194 because the California Supreme Court in *Reynolds v. Bement* (2005) 36 Cal.4th 1075 [32 Cal.Rptr.3d 483, 116 P.3d 1162] held that individual shareholders, officers and directors of corporate employers may not be held personally liable for unpaid overtime under those sections. Tayebi asserted that Combs's remaining UCL and PAGA claims also failed because Combs had conceded that Tayebi had no personal involvement in any decisions relating to Combs's compensation or in any decision to classify him as an exempt employee.

In March 2006 the court granted Tayebi's summary judgment motion, rendering moot his summary adjudication motion. The court found that Combs failed to present admissible evidence sufficient to raise a triable issue of material fact whether Tayebi was Skyriver's alter ego. The court thereafter entered judgment against Combs and in favor of Tayebi.

C. *Bench Trial and Judgment (Code Civ. Proc., § 631.8) in Favor of Skyriver*

On May 17, 2006, after Combs presented his case-in-chief against Skyriver during the bench trial, Skyriver brought a motion for judgment under Code of Civil Procedure section 631.8. In its written motion, Skyriver argued the evidence Combs presented demonstrated that he was administratively exempt from overtime pay under the administrative exemption requirements set forth in IWC wage order No. 4-2001, and the federal regulations implementing the Fair Labor Standards Act of 1938, as amended (FLSA; 29 U.S.C. § 201 et seq.), incorporated therein, because the evidence showed he performed nonmanual work directly related to Skyriver's management policies or general business operations; he regularly exercised discretion and independent judgment; he performed under general supervision work along specialized or technical lines that required special training, experience or knowledge; and he was primarily engaged in duties that met the exemption test.

1. *Motion for judgment hearing and ruling*

After reviewing Skyriver's motion for judgment, the court heard oral argument on the motion. Noting it had also reviewed *Bell II, supra,* 87 Cal.App.4th 805, the court asked to hear first from Combs's counsel, indicating it needed to be persuaded that the *Bell II* administrative/production worker dichotomy was applicable in this case.

Combs's attorney asserted that under the *Bell II* administrative/production worker dichotomy, which was the "primary test in California law for evaluating key portions of [IWC wage order No. 4-2001] under the Administrative Exemption," "the defendants must prove not only that the plaintiff's work

was office or nonmanual [work], but also must prove that the plaintiff's work was directly related to management policies or general business operations of the defendant." Combs's counsel indicated that the language used in that test was "nearly utterly ambigu[o]us."

The court indicated that "of necessity," it had to look upon the *Bell II* administrative/production worker dichotomy "against the backdrop of the company that we have here in this case," and stated it had perceived a "flat management concept" at Skyriver, which "is not atypical of some start-ups or companies just beyond a start-up" that have "a smaller number of employees."

Acknowledging that the *Bell II* dichotomy test needed to be viewed against the "backdrop" of this particular case, Combs's counsel replied that the dichotomy was applicable in this case. That test, he asserted, was "very simple" and called for "simply drawing a distinction between those employees whose primary duty is to administer the business affairs of the enterprise and those whose primary duty is producing the commodity that the enterprise exists to produce and market." Reiterating that "[y]ou look at whether . . . the person's primary duty is producing that commodity," he maintained that although Skyriver marketed "connectivity," the "commodity" that it existed to provide to its customers was the network that provided that connectivity. Because Skyriver did not present any proof that Combs spent more than 50 percent of his work time on exempt tasks, Combs's counsel asserted, Combs was a production worker who provided the network that provided the connectivity.

In support of the motion, Skyriver's counsel argued that the *Bell II* administrative/production worker dichotomy did not apply because (1) *Bell II* was distinguishable in that it involved a "small company that [was] a subset of an insurance company where everybody in the company did the same exact thing, claims adjusting," and the *Bell II* court concluded that the company's product was claims adjusting; (2) while Skyriver's business was the sale of "broadband Internet conductivity," Combs managed and maintained the infrastructure that allowed Skyriver to sell that broadband Internet conductivity; and (3) Combs's supervisor (West) testified that Combs spent 70 percent of his time working on issues of independent judgment and discretion, and Combs himself testified that he spent 60 percent to 70 percent of his time maintaining the well-being of the network.

At the conclusion of the hearing, the court found that the *Bell II* dichotomy did not apply in this case, and the evidence established that Combs was an administratively exempt employee under IWC wage order No. 4-2001.

Accordingly, the court found that Skyriver was entitled to judgment under Code of Civil Procedure section 631.8 on all three of Combs's causes of action.

### 2. Statement of decision and entry of judgments

The court thereafter issued a written statement of decision granting Skyriver's motion for judgment. After discussing the applicability of federal law and the administrative exemption requirements set forth in IWC wage order No. 4-2001, the court found that whether Combs was administratively exempt involved two tests derived from the administrative exemption provisions of IWC wage order No. 4-2001 (discussed *ante*), which are codified in California Code of Regulations, title 8, section 11040, subdivision 1(A)(2) (discussed *ante*): (1) A *"salary"* test (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(g)); and (2) a *"duties"* test (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)(I), (b), (d), (f)).

Under the salary test, the court found, Skyriver had the burden of proving that Combs earned "a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(g) [which also provides that "[f]ull-time employment is defined in California Labor Code Section 515[, subdivision] (c) as 40 hours per week."].)

Under the duties test, Skyriver had the burden of proving four other elements: (1) Combs's duties and responsibilities involved "[t]he performance of office or non-manual work directly related to management policies or general business operations of [Skyriver] or [Skyriver's] customers" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)(I)); (2) he "customarily and regularly exercise[d] discretion and independent judgment" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(b)); (3) he "perform[ed] under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(d)); and (4) he was "primarily engaged in duties that meet the test of the exemption" as those activities are construed in the FLSA regulations incorporated in IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f)).

Applying the salary test, the court found that Combs "earned far more than the minimum necessary to pass the 'salary' test," because twice the annual salary for full-time employment at the state minimum wage that applied during his employment at Skyriver ($6.75/hour) was $28,080 ($6.75/hour x 40 hours/week x 52 weeks/year x 2 = $28,080/year); and Combs's testimony showed he earned between $70,000 and $90,000 during his employment there.

Stating that it "remain[ed] unconvinced" that the *Bell II* administrative/production worker dichotomy was "a useful test given the specific facts and credible evidence in this particular case," the court applied the duties tests and found that Combs passed that test because (1) his job duties consisted primarily of office or nonmanual work directly related to Skyriver's management policies or general business operations; (2) credible evidence showed that he "customarily and regularly exercised discretion and independent judgment during his employment at Skyriver" because he was "responsible for maintaining, developing and improving Skyriver's data network, which included higher-level problem solving, expansion, improvement and integration planning, evaluating technical options, as well as some ancillary equipment sourcing and purchasing functions"; (3) he performed his work "under only general supervision and along specialized or technical lines requiring special training, experience, or knowledge"; and (4) he was primarily engaged in activities that were administrative in nature under the applicable regulations, because the evidence showed that his duties involved "high-level problem-solving, planning for expansion of the network, planning to integrate acquired networks into Skyriver's network, identifying equipment needs, identifying sources for equipment, and planning improvements to the network, all of which are included in what Combs[] described as his primary responsibility—'maintaining the well-being' of the network."

Accordingly, the court also found that "Combs was exempt from overtime under the administrative exemption . . . ," and thus Skyriver was entitled to judgment on Combs's causes of action. This appeal followed.

## DISCUSSION

### I. *ADMINISTRATIVE/PRODUCTION WORKER DICHOTOMY*

Combs first contends the court committed reversible error by failing to apply the *Bell II* administrative/production worker dichotomy pertaining to the administrative exemption from IWC overtime compensation requirements, as set forth in *Bell II, supra*, 87 Cal.App.4th 805. In a related claim, Combs also contends that application of the *Bell II* dichotomy would have resulted in a determination that Combs was a production worker, not an administrator, and thus that he was not administratively exempt. For reasons we shall explain, we conclude the court did not err in its decision to not apply the *Bell II* dichotomy, and thus Combs's contention that the application of the dichotomy would have resulted in a determination that he was a nonexempt production worker is moot.

## A. Standards of Review

In reaching its decision to not apply the *Bell II* dichotomy, the court interpreted the administrative exemption provisions of IWC wage order No. 4-2001 in light of the applicable regulations and the decision in *Bell II, supra*, 87 Cal.App.4th 805. We review the trial court's interpretation of statutes and regulations de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956] [statutes]; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2] [regulations].)

## B. Applicable Legal Principles

### 1. IWC wage order No. 4-2001

Section 1173 grants the IWC a broad mandate to regulate the working conditions of employees in California, including the setting of standards for minimum wages and maximum hours. (See *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 701–702 [166 Cal.Rptr. 331, 613 P.2d 579].) To that end, the IWC has promulgated 17 different wage orders that apply to distinct groups of employees. (Cal. Code Regs., tit. 8, §§ 11010–11170.)

The wage order at issue in this case is IWC wage order No. 4-2001,[3] the provisions of which are codified in California Code of Regulations, title 8, section 11040. One of defendants' principal affirmative defenses to Combs's action was their allegation that Combs was "exempt from the provisions under which [he] assert[ed] his claims." In its motion for judgment at trial, Skyriver successfully argued that the trial evidence showed that Combs was exempt from California's overtime compensation laws under the administrative exemption set forth in IWC wage order No. 4-2001.

### Administrative exemption

IWC wage order No. 4-2001, which took effect on January 1, 2001, as amended, governs wages and hours of employees in "Professional, Technical, Clerical, Mechanical, and Similar Occupations." (Cal. Code Regs., tit. 8, § 11040.) It provides for certain exemptions from (among other things) the overtime compensation requirements set forth therein. (Cal. Code Regs., tit. 8, § 11040, subds. 1(A), 3(A).) Specifically, IWC wage order No. 4-2001 exempts "persons employed in *administrative*, executive, or professional

---

[3] The IWC's wage orders, including IWC wage order No. 4-2001, may be found at the Web site of California's Department of Industrial Relations <http://www.dir.ca.gov/iwc/wageorderindustries.htm> (as of Jan. 17, 2008).

capacities." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A), italics added.) The exemptions are affirmative defenses, and thus an employer bears the burden of proving that an employee is exempt. (See *Ramirez v. Yosemite Water Co., supra*, 20 Cal.4th at pp. 794–795.) Under California law, exemptions from mandatory overtime provisions are narrowly construed. (*Id.* at p. 794.)

IWC wage order No. 4-2001 contains a detailed multielement definition of the term "person employed in an administrative capacity" delineating the scope of the administrative exemption. Specifically, California Code of Regulations, title 8, section 11040, subdivision 1(A)(2), provides in part: "*Administrative Exemption*[.] A person employed in an administrative capacity means any employee: [¶] (a) Whose duties and responsibilities involve . . . [¶] . . . [t]he performance of *office or non-manual work directly related to management policies or general business operations* of his/her employer or his employer's customers . . . [¶] . . . ; and [¶] (b) Who *customarily and regularly exercises discretion and independent judgment*; and [¶] . . . [¶] (d) Who *performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge*; . . . [¶] . . . and [¶] (f) Who is *primarily engaged in duties that meet the test of the exemption*. . . . Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement. [¶] (g) Such employee must also earn a *monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment*. Full-time employment is defined in California Labor Code Section 515[, subdivision] (c) as 40 hours per week. " (Italics added.)

█ The term "primarily" as used in California Code of Regulations, title 8, section 11040, subdivision 1(A)(2)(f) ("*primarily* engaged in duties that meet the test of the exemption" [italics added]) is defined to mean "more than one-half the employee's work time." (Cal. Code Regs., tit. 8, § 11040, subd. 2(N).)

Unlike previous versions of IWC wage order No. 4, IWC wage order No. 4-2001 expressly incorporates certain FLSA regulations effective as of the date that wage order was issued. Specifically, California Code of Regulations, title 8, section 11040, subdivision 1(A)(2)(f) provides in part: "The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following

regulations under the [FLSA] effective as of the date of this order: 29 [Code of Federal Regulations parts] 541.201–205, 541.207–208, 541.210, and 541.215."[4]

The definition of the administrative exemption provided in IWC wage order No. 4-2001 closely parallels the federal regulatory definition of the same exemption. Under the FLSA, "any employee employed in a bona fide executive, *administrative*, or professional *capacity*" is exempt from the statute's minimum wage and maximum hour requirements, and thus from the overtime compensation requirements. (29 U.S.C. § 213(a)(1), italics added.)

The FLSA delegates to the federal Department of Labor (DOL) the authority to "define[] and delimit[]" (29 U.S.C. § 213(a)(1)) the scope of those exemptions.[5] The general federal rule defining and delimiting the scope of the administrative employee exemption is set forth in 29 Code of Federal Regulations part 541, subpart C. That regulation provides, similarly to IWC wage order No. 4-2001, that a person " 'employed in a bona fide *administrative capacity*' " is an employee whose "*primary* duty" is "the performance of *office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.*" (29 C.F.R. § 541.200(a)(2), italics added.) Like wage order No. 4-2001, the federal regulation also includes a number of other requirements—such as a specified minimum salary and the requirement that the employee's "primary duty" include the "exercise of discretion and independent judgment with respect to *matters of significance.*" (29 C.F.R. § 541.200(a)(1), (3), italics added.)

In addition to regulations defining the administrative and other exemptions, the DOL has promulgated interpretive regulatory guidelines explaining the terminology used in the regulatory definitions. One entire part, 29 Code of Federal Regulations part 541.201, is devoted to explaining the meaning of the phrase "directly related to management policies or general business operations," a phrase used in the administrative exemption provisions of IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a), quoted *ante*). That regulation (29 C.F.R. § 541.201) is one of the federal regulations expressly incorporated into wage order No. 4-2001. (See Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).) It provides at the outset that "[t]o

[4] All citations to title 29 of the Code of Federal Regulations are to the 2006 version.

[5] Effective August 23, 2004, the DOL revised the FLSA's implementing regulations governing certain exemptions from the FLSA's minimum wage and overtime pay requirements, including the exemption for any employee employed in a bona fide administrative capacity. (69 Fed.Reg. 22122 (Apr. 23, 2004).) Those regulations are set forth in 29 Code of Federal Regulations part 541, the provisions of which may currently be found at the Web site of the wage and hour division of the DOL's Employment Standards Administration: <http://www.dol.gov/dol/allcfr/ESA/Title_29/Part_541/toc.htm> (as of Jan. 17, 2008). They may also be found at 69 Federal Register 22122, 22260–22274 (Apr. 23, 2004).

qualify for the administrative exemption, an employee's *primary* duty must be the performance of *work directly related to the management or general business operations of the employer or the employer's customers.*" (29 C.F.R. § 541.201(a), italics added.) It then provides that "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform *work directly related to assisting with the running or servicing of the business*, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." (*Ibid.*, italics added.)

Subpart (b) of that federal regulation (29 C.F.R. § 541.201) gives additional interpretive guidance regarding the phrase "directly related to the management or general business operations" by explaining that this phrase: "[*I*]*ncludes, but is not limited to*, work in functional areas such as tax; finance; accounting; *budgeting*; auditing; insurance; quality control; *purchasing*; *procurement*; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; *computer network, internet and database administration*; legal and regulatory compliance; and similar activities." (29 C.F.R. § 541.201(b), italics added.)

Interpretive guidance regarding the phrase "exercise of discretion and independent judgment with respect to matters of significance," which is used in 29 Code of Federal Regulations part 541.200(a)(3) (discussed *ante*), is provided in 29 Code of Federal Regulations part 541.202(a), which is expressly incorporated in IWC wage order No. 4-2001. (See Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).) It provides in part: "In general, the *exercise of discretion and independent judgment* involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term '*matters of significance*' refers to the level of importance or consequence of the work performed." (29 C.F.R. § 541.202(a), italics added.)

Subpart (b) of 29 Code of Federal Regulations part 541.202 provides additional interpretive guidance regarding the phrase "exercise of discretion and independent judgment with respect to matters of significance": "The phrase '*discretion and independent judgment*' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee *exercises discretion and independent judgment with respect to matters of significance* include, but are not limited to: whether the employee has *authority to formulate, affect, interpret, or implement management policies or operating practices*; whether the employee *carries out major assignments in*

*conducting the operations of the business*; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has *authority to negotiate and bind the company on significant matters*; whether the employee provides *consultation or expert advice to management*; whether the employee is involved in *planning long- or short-term business objectives*; whether the employee *investigates and resolves matters of significance on behalf of management*; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." (Italics added.)

Subpart (e) of that same regulation further explains that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. . . . *The exercise of discretion and independent judgment* also *does not include . . . performing . . . mechanical, repetitive, recurrent or routine work.*" (29 C.F.R. § 541.202(e), citation omitted, italics added.)

### 2. Bell II *administrative/production worker dichotomy*

Having reviewed both the provisions of the administrative exemption set forth in IWC wage order No. 4-2001 and key federal regulations governing the interpretation of those provisions, we next discuss the origin, meaning and limitations of the *Bell II* administrative/production worker dichotomy.

#### a. *Bell II*

The *Bell II* administrative/production worker dichotomy is a test that was created in *Bell II, supra,* 87 Cal.App.4th 805, 819–820, for determining whether an employee subject to former IWC wage order No. 4 qualified for the administrative exemption and thus should be exempt from overtime compensation requirements. (See also *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 728–729 [9 Cal.Rptr.3d 544] (*Bell III*).) Unlike IWC wage order No. 4-2001, former IWC wage order No. 4 contained no useful definition of the scope of the administrative exemption. (See *Bell II, supra,* 87 Cal.App.4th at p. 811.)

*Bell II* held that the claims representatives in the plaintiff class were nonexempt production workers, not exempt administrative employees, of the defendant insurance company under former IWC wage order No. 4. (*Bell II,*

*supra*, 87 Cal.App.4th at pp. 826, 828.) In so holding, the *Bell II* court based its interpretation of wage order No. 4 on the federal regulations defining the administrative exemption to the wage and hour provisions of the FLSA. (*Bell II, supra*, 87 Cal.App.4th at pp. 814–815.) The *Bell II* court explained that federal authorities, drawing on the federal regulations (specifically, 29 C.F.R. §§ 541.2, 541.205(a)), drew "a *distinction between administrative employees*, who are usually described as employees performing work 'directly related to management policies or general business operations of his employer or his employer's customers,' *and production employees*, who have been described as 'those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce.' [Citation.]" (*Bell II, supra*, 87 Cal.App.4th at p. 820, fn. omitted.) Applying this "distinction"—which it called the "administrative/production worker dichotomy"—to the undisputed facts regarding the members of the plaintiff class of claims representatives, the *Bell II* court concluded that their work fell *"squarely on the production side* of the administrative/production worker dichotomy" (*id.* at p. 826, italics added) because they were "ordinarily occupied in the routine of processing a large number of small claims," and thus their responsibilities were restricted to the " 'routine and unimportant.' " (*Id.* at pp. 827–828.) The *Bell II* court explained, however, that the dichotomy's "somewhat gross distinction" between administrative employees and production employees "may not be dispositive in many cases," and warned that it should be applied with "great caution." (*Id.* at pp. 826–827.)

### b. *Bell III*

*Bell III, supra*, 115 Cal.App.4th 715, involved the same litigation and administrative exemption claim under former IWC wage order No. 4 that was involved in *Bell II*. The *Bell III* court revisited its earlier decision and explained that "we found [in *Bell II*] that a core concept appearing in the federal interpretative regulations and decisional law—*the administrative/production worker dichotomy*—provided a useful approach to determining whether an employee worked in an 'administrative capacity' as required by the exemption provision of wage order No. 4." (*Bell III, supra*, 115 Cal.App.4th at p. 728, italics added.) It further explained that "[t]his dichotomy suggested by 29 [Code of Federal Regulations] part 541.205(a) has become a *generally accepted framework of analysis in the decisional law construing the statutory term 'administrative capacity' in the FLSA*. The cases distinguish between ' "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." ' [Citation.]" (*Bell III, supra*, 115 Cal.App.4th at p. 729, italics added.)

The *Bell III* court reiterated its admonitions in *Bell II* that the administrative/production worker dichotomy may not be dispositive in many cases, and California courts must use great caution in applying the *Bell II* dichotomy. (*Bell III, supra,* 115 Cal.App.4th at p. 730.)

### C. *Analysis*

Suggesting on appeal that application of the *Bell II* administrative/production worker dichotomy is mandatory in all administrative exemption cases, Combs asserts that the court's "most fundamental error" was its failure to apply "binding [legal] precedent" establishing that the *Bell II* dichotomy is a "generally accepted framework for analysis." In support of this claim of error, Combs relies on *Bell III, supra,* 115 Cal.App.4th at page 729, in which the same appellate court that decided *Bell II* stated that the *Bell II* dichotomy "ha[d] become a *generally accepted framework of analysis* in the decisional law construing the statutory term 'administrative capacity' in the FLSA." (Italics added.)

Combs's reliance on *Bell II* and *Bell III* is unavailing because those cases are factually and legally distinguishable. They are factually distinguishable in that the class plaintiffs in that litigation were former and current insurance claims adjusters who worked in California branch claims offices and, according to their employer's own characterization in its regional claims manual, their job responsibilities were restricted to the " 'handling of *the routine and unimportant.*' " (*Bell II, supra,* 87 Cal.App.4th at pp. 827–828, some italics omitted.) In upholding the trial court's determination that the claims adjusters were production, not administrative, employees within the meaning of the administrative exemption set forth in former IWC wage order No. 4, the appellate court in *Bell II* concluded that the record as a whole confirmed that the claims adjusters were "ordinarily occupied in the *routine* of processing a large number of small claims," and "[o]n matters of relatively greater importance, they [were] engaged only in conveying information to their supervisors—again primarily a *'routine and unimportant' role.*" (*Bell II, supra,* 87 Cal.App.4th at pp. 827–828, italics added.) Here, however, as we shall explain, *post,* there is no evidence to show that Combs's responsibilities at Skyriver were limited to "the routine and unimportant."

*Bell II* and *Bell III* are also legally distinguishable in that they involved former IWC wage order No. 4, which did not incorporate any federal regulations and did not contain a detailed definition of the scope of the administrative exemption. Unlike former IWC wage order No. 4, the wage order at issue here—IWC wage order No. 4-2001—expressly incorporates certain federal regulations in effect when it was issued: 29 Code of Federal Regulations parts 541.201 to 541.205, 541.207 to 541.208, 541.210, and 541.215. (Cal.

Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).) In addition, IWC wage order No. 4-2001 contains a detailed multielement definition of the term "person employed in an administrative capacity," which delineates the scope of the administrative exemption (discussed *ante*). (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2).) In applying its "salary and duties" test, the court in effect applied those definitional elements to the evidence presented at trial.

■ Combs's reliance on *Bell II* and *Bell III* is unavailing for the additional reason that, as already mentioned, the appellate court strongly admonished in both those cases that the *Bell II* dichotomy may not be dispositive in many cases involving a claim of administrative exemption, and in fact warned that the dichotomy should be applied with great caution. Referring to a line of federal cases in which summary judgments for plaintiffs had been granted or affirmed on a finding that they were production workers within the meaning of the administrative/production worker dichotomy, the Court of Appeal explained in *Bell II* that "[w]e recognize that *the administrative/production worker dichotomy is a somewhat gross distinction that may not be dispositive in many cases.* The federal decisions granting judgment for plaintiffs on the basis of this dichotomy were decided in the context of interpretative regulations that guard against an overly broad application of the distinction." (*Bell II, supra,* 87 Cal.App.4th at p. 826, italics added.) The *Bell II* court observed that "some employees perform *specialized functions* within the business organization *that cannot be readily categorized in terms of the administrative/production worker dichotomy.* [Citation.] Other employees perform jobs involving wide variations in responsibility that may call for *finer distinctions* than the administrative/production worker dichotomy provides." (*Id.* at pp. 826–827, italics added.) The *Bell II* court then admonished that "[i]n the absence of detailed interpretative regulations comparable to those in federal cases, we consider that *California courts must use great caution in granting summary judgment or summary adjudication on the basis of such a broad distinction as the administrative/production worker dichotomy.*" (*Id.* at p. 827, italics added.) The same appellate court that decided *Bell II* later reiterated those admonitions in *Bell III.* (*Bell III, supra,* 115 Cal.App.4th at p. 730.)

■ The admonitions in *Bell II* and *Bell III* should be heeded here. The *Bell II* court's creation of the administrative/production worker dichotomy was necessitated by the fact that former IWC wage order No. 4 lacked any reference to applicable federal regulations, and also lacked the detailed definition of the administrative exemption now found in IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)). Because IWC wage order No. 4-2001, unlike former IWC wage order No. 4, expressly incorporates applicable federal regulations and sets forth a set of specific elements that, if proved, will establish that an employee is a "person employed in an administrative capacity" for purposes of the administrative exemption set

forth therein (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)–(f)), we conclude the court acted well within its discretion when it declined to apply the *Bell II* administrative/production worker dichotomy and instead applied those elements to the trial record in determining whether Skyriver had met its burden under *Ramirez v. Yosemite Water Co., supra*, 20 Cal.4th at pages 794–795, of establishing its affirmative defense that Combs was an administratively exempt employee.

We also conclude that substantial evidence supports the court's decision to not apply the *Bell II* dichotomy. As already noted, the *Bell II* court observed that some employees perform "specialized functions" that "cannot be readily categorized in terms of the administrative/production worker dichotomy," and other employees perform jobs that involve "wide variations in responsibility that may call for finer distinctions than the administrative/production worker dichotomy provides." (*Bell II, supra*, 87 Cal.App.4th at pp. 826–827.) As we shall explain, *post*, the trial record shows that during his employment at Skyriver Combs performed "specialized functions" that, unlike the "routine and unimportant" functions performed by the claims adjusters in *Bell II* and *Bell III*, could not be readily categorized in terms of the *Bell II* administrative/production worker dichotomy.

In addition, the record shows that the wide variations in Combs's job responsibilities called for "finer distinctions than the [*Bell II*] administrative/production worker dichotomy provides." (*Bell II, supra*, 87 Cal.App.4th at p. 827.) One of Combs's own witnesses, West, testified that Skyriver "was much more of a *flat organization*. Everybody worked with everybody." (Italics added.) When the court asked West whether "people with titles like vice president and directors and managers" worked "side by side lugging equipment" with someone who had an entry-level title, West replied, "Yes," and clarified that "they were doing similar jobs together." When the court then asked, "And would it be the extraordinary time when that would occur or was that common?," West responded, "I think in many cases it was common."

In explaining its decision to not apply the *Bell II* dichotomy in this case, the court stated that it had to look upon the dichotomy "against the backdrop of the company that we have here in this case." Apparently referring to West's testimony, the court explained that it had perceived a *"flat management* concept" (italics added) at Skyriver, which was "not atypical of some start-ups or companies just beyond a start-up" that have "a smaller number of employees where oftentimes it is adrenaline that is driving the company because the rest are dreams."

Because substantial evidence shows that Skyriver's corporate administrators commonly worked side by side with employees who were not administrative employees, and there is no evidence in the record to show that Combs's job responsibilities were limited to "the routine and unimportant" as was the case in *Bell II*, we uphold the court's decision to not apply the *Bell II* administrative/production worker dichotomy. We thus need not, and do not, address Combs's related contention that the application of the *Bell II* dichotomy would have resulted in a determination that he was a nonexempt production worker.

## II. *IWC WAGE ORDER NO. 4-2001 ADMINISTRATIVE EXEMPTION TEST*

Combs next contends that apart from the *Bell II* test, Combs's job duties did not otherwise meet the test of the administrative exemption outlined in IWC wage order No. 4-2001, and thus he was entitled to judgment in his favor. We reject this contention.

### A. *Legal Principles*

 Combs challenges the court's decision to grant Skyriver's motion for judgment under Code of Civil Procedure section 631.8. In a nonjury trial, such as the one held in this case, a motion for nonsuit is no longer recognized; the correct motion is a motion for judgment under Code of Civil Procedure section 631.8. (*Commonwealth Memorial, Inc. v. Telophase Society of America* (1976) 63 Cal.App.3d 867, 869, fn. 1 [134 Cal.Rptr. 58]; see also 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, §§ 339, 440.) A party may move for judgment in its favor under that section after the opposing party has completed presentation of its evidence. (Code Civ. Proc., § 631.8, subd. (a).)[6] The judge, sitting as trier of fact, may weigh the evidence and order judgment in favor of the moving party. (§ 631.8 subd. (a).) " ' "The purpose of Code of Civil Procedure section 631.8 is . . . to dispense with the need for the defendant to produce evidence . . ." ' " where the court is persuaded that the

---

[6] Code of Civil Procedure section 631.8, subdivision (a) provides: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party. Such motion may also be made and granted as to any cross-complaint."

plaintiff has failed to sustain its burden of proof. (*Roth v. Parker* (1997) 57 Cal.App.4th 542, 549 [67 Cal.Rptr.2d 250].) Because the trial court evaluates the evidence as a trier of fact, it may refuse to believe some witnesses while crediting the testimony of others. (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255 [54 Cal.Rptr.2d 340].)

We apply the substantial evidence standard of review to a judgment entered under Code of Civil Procedure section 631.8, reviewing the record in the light most favorable to the judgment and making all reasonable inferences in favor of the prevailing party (here, Skyriver). (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473].) We will not reverse the trial court's order granting the motion if its findings are supported by substantial evidence, even if other evidence in the record conflicts. (*Roth v. Parker, supra,* 57 Cal.App.4th at pp. 549–550.)

### B. *Analysis*

On appeal, Combs does not challenge the court's finding that he passed the salary test set forth in California Code of Regulations, title 8, section 11040, subdivision 1(A)(2)(g). Combs thus concedes that Skyriver met its burden of proving that during his employment at Skyriver he earned a monthly salary equivalent to no less than twice the state minimum wage for full-time employment within the meaning of the administrative exemption provisions of IWC wage order No. 4-2001.

With respect to the duties test, Combs also does not challenge the court's findings that (1) his work was "office or non-manual work" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)(I)); and (2) he performed his work "under only general supervision[ and] along specialized or technical lines requiring special training, experience, or knowledge" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(d)).

Combs contends that Skyriver failed to prove the remaining "critical" elements of the duties test. Specifically, he contends that Skyriver failed to prove that (1) his work was "directly related to [Skyriver's] management policies or general business operations"; (2) he "customarily and regularly exercised discretion and independent judgment"; and (3) his job duties made up more than half of his work day. As we now explain, this contention is unavailing.

1. *Work "directly related to management policies or general business operations"*

Combs first asserts that Skyriver "failed to prove, and indeed could not prove" that his work was "directly related to [Skyriver's] management

policies or general business operations" within the meaning of California Code of Regulations, title 8, section 11040, subdivision 1(A)(2)(a)(I). In support of this assertion, he maintains that Skyriver's "product" was Internet connectivity, and "there is no dispute" that "for the majority of his workweek . . . [he] ensured continued network connectivity[;] he ensured the delivery of the product to his employer's customers."

By essentially ignoring the interpretive FLSA regulatory definitions and interpretive guidelines expressly incorporated in IWC wage order No. 4-2001 (see Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f)), as well as the vast majority of the trial record (including much of his own testimony), and by again relying on his unavailing claim (discussed *ante*) that the court erred by not applying what his trial counsel called the "very simple" *Bell II* administrative/production worker dichotomy, Combs has failed to meet his burden on appeal of showing that the court's finding is not supported by substantial evidence. As already discussed, 29 Code of Federal Regulations part 541.201(a) provides that the phrase "directly related to the management or general business operations" refers to the type of work performed by the employee; and to meet this requirement, an employee "must perform *work directly related to assisting with the running or servicing of the business*, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." (Italics added.) Subpart (b) of that federal regulation explains that this phrase "*includes, but is not limited to*, work in functional areas such as . . . *budgeting*; . . . purchasing; *procurement*; . . . *computer network, internet and database administration*; . . . and similar activities." (29 C.F.R. § 541.201(b), italics added.)

Here, substantial evidence shows that Combs was responsible for maintaining, developing and improving Skyriver's network, and his duties involved high-level problem solving, preparing reports for Skyriver's board of directors, capacity and expansion planning, planning for the integration of acquired networks into Skyriver's network, lease negotiations, and equipment sourcing and purchasing. For example, Combs's resumé and his trial testimony show that during his employment at Skyriver, he served first as manager of capacity planning, and then as director of network operations. His resumé showed that his job functions as manager of capacity planning included "network planning"; design of network operations center (NOC) policies and procedures; management of "outsourced NOC"; development and management of "in-house NOC including new customer turn-up process and standards and event management protocols"; and development of "field technician protocols including all NOC support practices."

His resumé also showed that his job functions as director of network operations included "project management, budgeting, vendor management,

purchasing, forecasting[, and] employee management"; management of "overseas deployment of wireless data network"; management of "the integration and standardization of three networks into the Skyriver architecture"; and "overseeing day to day Network Operations including network upgrades, repairs, change controls, monitoring, and reporting."

Combs testified that his "core responsibility" was "maintaining the well-being of [Skyriver's] network." He stated that he prepared reports for Skyriver's board of directors, performed capacity and expansion planning, was occasionally responsible for lease negotiations, made recommendations with respect to purchasing and expansion planning, and was involved in integration planning.

Other witnesses testified about Combs's responsibilities and job functions at Skyriver. Akrie, West and Williams all testified that Combs's description of his duties in his resumé was accurate.

All of the foregoing evidence demonstrates that Combs's duties at Skyriver "directly related to the management or general business operations" within the meaning of the administrative exemption in IWC wage order No. 4-2001, because they "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment" (29 C.F.R. § 541.201(a)); and his work included "budgeting," "purchasing," "procurement," and "computer network, internet and database administration" (29 C.F.R. § 541.201(b)).

Although not binding on this court, the decision in *Bagwell v. Florida Broadband, LLC* (S.D.Fla. 2005) 385 F.Supp.2d 1316 (*Bagwell*) supports our conclusion. There, a network operation engineer sued his former employer, a Florida startup company engaged in the business of selling and providing high bandwidth Internet service, and its CEO alleging violations of the FLSA. (385 F.Supp.2d at pp. 1317–1318.) The defendants alleged as an affirmative defense that the plaintiff was an administrative employee exempt from the overtime provisions of the FLSA. (385 F.Supp.2d at p. 1318.) Holding that the plaintiff was exempt from those provisions, the *Bagwell* court found that the plaintiff's work was " 'directly related to management policies or general business operations of the employer' " within the meaning of 29 Code of Federal Regulations part 541.201(a) because his primary duty was developing, improving, and making his employer's network system function reliably. (385 F.Supp.2d at pp. 1318, 1324, 1326.) Specifically, the district court found that the plaintiff engaged in advising management, planning and negotiating, and his job "involved finding network solutions to complex problems of [his employer] and its customers." (*Id.* at p. 1324.) The

*Bagwell* court also explained that the employer "sold internet access and its success was dependent upon whether it could provide the internet service," the plaintiff "worked to ensure that [his employer] could provide that service," and his work as a network operation engineer was of substantial importance to his employer. (*Id.* at p. 1325.) The *Bagwell* plaintiff's primary duty was thus very similar to Combs's primary duty (discussed *ante*).

### 2. *Customary and regular exercise of discretion and independent judgment*

Combs next maintains that Skyriver failed to present evidence sufficient to prove that he "customarily and regularly exercise[d] discretion and independent judgment," which is another definitional element of IWC wage order No. 4-2001's administrative exemption. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(b).) He contends Skyriver "cannot identify any significant evidence in the record to meet its burden that [he] exercised discretion and independent judgment for greater than [50] percent of his time." These contentions are unavailing.

Combs himself testified that he spent 60 to 70 percent of his time on his core responsibility of maintaining the well-being of Skyriver's network. Williams testified that Combs, in carrying out his role of "troubleshooting an issue with [Skyriver's] network," had "the authority to determine the course of action to correct the problem." West testified that Combs was involved in tasks that required him to exercise discretion and independent judgment more than 70 percent of the time.

Furthermore, as discussed *ante*, the regulatory definition of the federal administrative exemption, like IWC wage order No. 4-2001, includes a number of requirements, including the requirement that the employee's "primary duty" include "exercise of discretion and independent judgment with respect to *matters of significance.*" (29 C.F.R. § 541.200(a)(1), (3), italics added.) Interpretive guidance regarding that phrase is provided in 29 Code of Federal Regulations part 541.202, which is expressly incorporated into IWC wage order No. 4-2001. (See Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).) It provides in part that "[t]he term 'matters of significance' refers to the level of importance or consequence of the work performed." (29 C.F.R. § 541.202(a).) Thus, the element of IWC wage order No. 4-2001's administrative exemption requiring that the employee "customarily and regularly exercises discretion and independent judgment" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(b)) also requires that such exercise of discretion and independent judgment pertain to "matters of significance." (29 C.F.R. § 541.202(a).)

Here, substantial evidence shows that Combs's exercise of discretion and independent judgment during his employment at Skyriver pertained to "matters of significance." Jamin Cleveland, Skyriver's director of information technology who previously held positions at Skyriver as a technical support engineer and a systems engineer, testified that Combs was Skyriver's "quarterback" with respect to solving problems with the operation of Skyriver's network. Cleveland stated that Combs was responsible for identifying, selecting, and integrating new equipment into Skyriver's network after Skyriver acquired other networks. The many high-level job responsibilities listed in Combs's resumé (discussed *ante*) also supported a finding that he customarily and regularly exercised discretion and independent judgment with respect to matters of significance.

*Bagwell, supra* 385 F.Supp.2d 1316 again supports our conclusion. Concluding that the plaintiff, in his capacity as a network operation engineer, exercised independent judgment for purposes of the FLSA administrative exemption, the district court found that the plaintiff "recommended decisions that directly affected [his employer's] operations and financial future" (385 F.Supp.2d at p. 1325), he "sometimes spent most of his day problem solving and thinking about ways to improve the network," and he "had the discretion to suggest . . . equipment purchases, and ways for improving and correcting the network." (*Id.* at p. 1326.) This exercise of discretion and independent judgment is very similar to that of Combs.

### 3. *Primary engagement in duties that meet the administrative exemption test*

Last, Combs contends "the record is devoid of any substantial evidence that [his] job duties that might otherwise meet the . . . test of the [administrative] exemption made up more than one-half of [his] work day . . . ," and thus there is no evidence to show he was "primarily engaged in duties that meet the test of the exemption" (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f)). This contention, too, is unavailing. As discussed *ante*, Combs himself testified that he spent 60 to 70 percent of his time on his core responsibility of maintaining the well-being of Skyriver's network. We have already concluded that such activity can be characterized as both "work directly related to assisting with the running or servicing of the business," and work that includes "computer network, internet and database administration" within the meaning of 29 Code of Federal Regulations part 541.201, the federal regulation incorporated in IWC wage order No. 4-2001 that explains the meaning of the phrase "directly related to management policies or general business operations" used in the administrative exemption provisions of that wage order. (See Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a), (f).)

■ In sum, substantial evidence supports the court's determination that Combs was an administratively exempt employee under IWC wage order No. 4-2001. Accordingly, we conclude the court did not err in granting Skyriver's motion for judgment and thereafter entering judgment in its favor.

## III. *SUMMARY JUDGMENT MINUTE ORDER*

Combs next contends the court's grant of summary judgment in favor of Tayebi conflicts with its own summary judgment minute order that openly acknowledged liability. We reject this contention.

Combs asserts that the court's minute order granting summary judgment "openly acknowledged liability" under the PAGA and the UCL because the court "said material issues of fact exist regarding both code sections."

Combs misconstrues the record. The minute order in question, which was filed on March 15, 2006, set forth the court's ruling not only on Tayebi's motion for summary judgment, but also on Skyriver's motion for summary judgment or, in the alternative, summary adjudication. The minute order excerpt to which Combs refers relates not to Tayebi's motion, but to Skyriver's motion. The minute order stated that Skyriver's motion was denied because "[m]aterial issues of fact exist whether or not the administrative exemption under IWC wage order No. 4-2001 applies. Such questions also exist re[garding] the [second cause of action for violation of the UCL] and [third cause of action] for violation of [the PAGA]."

Combs's contention is unavailing on its merits. He provides no authority, nor can he, to support his claim that a finding in a summary judgment or summary adjudication proceeding that triable issues of material fact exist constitutes an "acknowledge[ment of] liability." Any triable issues of material fact found in such a proceeding must still be decided by the trier of fact based on admissible evidence before any question of liability can be determined.

## IV. *TAYEBI'S ALLEGED LIABILITY UNDER THE PAGA AND THE UCL*

Combs next asserts that material issues of fact exist with regard to Tayebi's liability under the PAGA and the UCL in his capacity as Skyriver's CEO, as he "was ultimately responsible for the conduct of the corporation during his watch." We reject this assertion. For reasons already discussed, we have concluded that the court did not err in determining that Combs was an administratively exempt employee under IWC wage order No. 4-2001, and thus it did not err in granting Skyriver's motion for judgment. Because

Skyriver is not liable in this matter, we conclude there was and is no triable issue of material fact as to Tayebi's alleged liability under the PAGA and the UCL.

In a related claim, Combs separately contends that failing to pay Combs his overtime wages constituted an unfair business practice under the UCL for which Tayebi may be held liable. We reject this contention. Again, we have already concluded that the court did not err in determining that Combs was an exempt administrative employee under IWC wage order No. 4-2001. Thus, Skyriver's failure to pay Combs overtime wages could not, and did not, constitute an unfair business practice under the UCL, and Tayebi thus could not be held liable under any theory for that nonpayment of overtime compensation.

## V. *TAYEBI'S ALLEGED LIABILITY UNDER THE ALTER EGO DOCTRINE*

Combs also maintains that Tayebi was not entitled to summary judgment or summary adjudication because material questions of fact exist as to whether he is the alter ego of Skyriver. Because the court properly found, for reasons discussed *ante*, that Combs was an exempt employee, and thus neither Skyriver nor Tayebi could be held liable for the nonpayment of overtime compensation to Combs, there can be no triable issue of material fact as to Tayebi's alleged status as the alter ego of Skyriver. Accordingly, we conclude the court properly granted summary judgment in favor of Tayebi.

## VI. *DENIAL OF COMBS'S MOTION FOR A CONTINUANCE*

Last, Combs contends the court erred when it denied his motion to continue the hearing on Tayebi's motion for summary judgment to permit Combs to conduct further discovery on matters material to the issue of alter ego liability, which (he asserts) should have been allowed according to Code of Civil Procedure section 437c, subdivision (h). We reject this contention.

### A. *Legal Principles*

Code of Civil Procedure section 437c, subdivision (h) provides in part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that *facts essential to justify opposition may exist but cannot, for reasons stated, then be presented,* the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be

just." (Italics added.) A party seeking a continuance under that subdivision must show " ' "(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts." ' " (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023 [18 Cal.Rptr.3d 1].)

We apply an abuse of discretion standard of review to the trial court's decision not to continue a summary judgment motion for the purpose of allowing further discovery. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100 [20 Cal.Rptr.3d 1].)

B. *Analysis*

Although Combs contends he requested a continuance, the record shows that in his written opposition to Tayebi's summary judgment motion, Combs requested that the court deny Tayebi's motion under Code of Civil Procedure section 437c, subdivision (h), on the grounds that (1) he had requested that Tayebi and Skyriver produce documents on matters material to the issue of Tayebi's alleged alter ego liability, but he had received only objections in return; and thus (2) facts essential to justify opposition to Tayebi's summary judgment motion "may exist, but cannot be currently presented." In support of that request, Combs submitted his counsel's declaration, which stated he had served the request for production of documents, and counsel for Skyriver and Tayebi responded by "serv[ing] notice of objection to all of the requested documents, and produc[ing] none of [them]."

In granting Tayebi's summary judgment motion, the court implicitly denied Combs's request. We conclude the court did not err, as the record shows Combs did not comply with the requirements of Code of Civil Procedure section 437c, subdivision (h). Specifically, his counsel's supporting declaration did not explain why the information in the requested documents was essential to opposing Tayebi's motion or why additional time was needed. (See *Ace American Ins. Co. v. Walker, supra*, 121 Cal.App.4th at p. 1023.) Even if the court had erred in denying Combs's request, any such error would be harmless in light of our conclusion that the court properly determined that Combs was administratively exempt from California's overtime compensation requirements, and thus no triable issue of material fact existed with respect to Tayebi's alleged liability under the alter ego doctrine.

## DISPOSITION

The judgment is affirmed. Skyriver and Tayebi shall recover their costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2008, S161777.